Gibbs *v.* Thayer.

evidence admitted.   A verdict was returned against said **Day**, and he alleged exceptions to the admission of the evidence.

*G. T. Davis*, for the defendant Day.

*D. Aiken*, for the plaintiffs.

ISAAC GIBBS *vs.* EZRA THAYER.

A husband, having an estate for his own life in land of his wife, conveyed his interest therein, in trust for her benefit, by a deed fraudulent and void as against creditors, and which contained a warranty against all claims of the grantor or his heirs or of any other person claiming under him or them ; and having subsequently taken advantage of the insolvent law, and himself become the purchaser and received a conveyance of the assignee's interest in the land, it was held that he was estopped by his covenant to set up against his grantee the title so acquired.

An assignee in insolvency may sell and convey his interest, as such, in real estate

which has been conveyed by the debtor to defraud creditors, without first bring
ing an action therefor against the grantee.

THIS was an action of trespass to certain land described in
the writ, the fee of which was in the plaintiff's wife, the land
having been conveyed to her before her marriage. After the
marriage, the plaintiff conveyed his interest in the land, in
trust, to Elias Harris, by a deed of quitclaim with special
warranty.

By this deed, the plaintiff conveyed the land in question to
the grantee, in the following terms, namely : " All my right,
title, and interest, being a life right for and during the joint
lives of myself and my wife, Fanny Gibbs."

The deed contained the following clauses : —

" To have and to hold the aforementioned premises, with all the privileges and
appurtenances thereto belonging, to him, the said Elias, his heirs and assigns for·
ever, so that neither I, the said Isaac, nor my heirs, or any other person or persons
claiming from or under me or them, or in the name, right, or stead of me or them,
shall or will, by any way or means, have, claim, or demand, any right or title to
the aforesaid premises, or their appurtenances, or to any part or parcel thereoi
forever.

" Provided, however, and be it always understood, that the said Elias, his heirs
and assigns, shall hold the said interest above conveyed, during my natural life, t ›
the uses and upon the special trusts and confidence following, that is to say : — the
said Elias, his heirs and assigns, may let or demise the said premises, and make
such repairs thereof as he may in his discretion think best, or he may manage
said premises at his discretion, to the best advantage, and he shall apply the net pro
ceeds of such lettings, demisings, and carrying on, after deducting reasonable ex
penses and charges, to the support of the said Fanny and her family, during my
life, according to the best discretion of the said Elias, and the receipt of the said
Fanny shall be a sufficient discharge and justification to said Elias for all payments
made to her in fulfilment of this trust."

At the time this conveyance was made, the plaintiff was
owing debts, which were subsequently proved against him, as
an insolvent debtor.

On the 18th of March, 1844, the plaintiff went into insol-
vency, and his property was assigned by the master in the
usual form. The assignee was directed by the master, in the
due course of proceeding, to sell the property and rights of the
insolvent ; and, in pursuance of such order, and according to
its tenor, sold all the assignee's interest in the land, which
was the subject of this action, by public auction, to the plain

tiff, who received from the assignee a conveyance thereof duly executed.

The plaintiff entered upon the premises and demanded possession thereof from the defendant, who was in the occupation of the same under Harris, and who refused to yield possession.

The case was submitted to the court upon the foregoing statement of facts, and was argued in writing, after the adjournment, by *G. T. Davis, C. Devens, Jr.,* and *C. Allen,* for the plaintiff, and *E. Dickinson* and *E. G. Bowdoin,* for the defendant.

SHAW, C. J.   It seems to us, that the decision of this case depends upon a few well settled rules of law.   The action is trespass *quare clausum;* the plaintiff relies upon a title to the premises as his own, and the right of possession incident thereto.   The defendant holds under Elias Harris, and if Harris has the better title, the action cannot be maintained.

The plaintiff, by a deed of quitclaim, conveyed his life estate in this close to Elias Harris, to hold for the term of the joint lives of the grantor and his wife, who is still living, upon certain trusts.   This was a good and valid conveyance, as between the grantor and grantee, and vested the freehold in Harris, whether fraudulent or not as against creditors.   If fraudulent, it was voidable and not void, and the estate passed to the grantee, whether defeasible by creditors or not.   The fact that it was upon trust is immaterial.   This conveyance was given, with a special and qualified warranty, in the usual form common in Massachusetts, " so that neither I, the said Isaac, nor my heirs, or any other person or persons, claiming from or under me, or them, or in the name, right, or stead of me or them, shall or will, by any way or means, have, claim, or demand, any right or title to the aforesaid premises, or their appurtenances, or to any part or parcel thereof, forever." This clause constitutes a covenant of warranty, to the extent of its import.   It differs from a general warranty in this, that one is a warranty against any and all paramount titles; the other against the grantor himself, and all persons claiming under him.   *Newcomb* v. *Presbrey,* 8 Met. 406.   In the pre-

Gibbs *v.* Thayer.

sent case, the plaintiff is claiming the very same title, which he then conveyed with warranty, an estate for his own life then subsisting; and in this respect, it is quite distinguishable from the case where the grantor subsequently purchased in another estate.   *Comstock* v. *Smith*, 13 Pick. 116.

Such restricted warranty, to the extent of its operation, must work by way of estoppel, as well as by way of contract. If at the time of such conveyance and warranty, the estate conveyed was liable to be taken by the grantor's creditors, to satisfy his debts, this liability was an incumbrance, by reason of a subsisting right of creditors to take and hold the estate under him, and was at that time therefore a paramount subsisting claim, within the qualified warranty, and the taking of the estate by creditors would be a breach of that warranty.   *Blanchard* v. *Brooks*, 12 Pick. 47.

The plaintiff having gone into insolvency voluntarily, an assignee was chosen, and an assignment made in usual form; and under the authority and power thus given, the assignee undertook to sell and convey the close in question, and it was sold at auction, and purchased by the plaintiff.   A question is made by the defendant, whether the assignee could sell estate, which had thus been sold by the debtor, by a conveyance fraudulent against creditors, until he had himself brought an action and defeated the grantee's title.   Perhaps this is not material in this case for the reason after stated; but it seems to us, that it would be too restricted a view of the statute, to hold that an assignee takes only a right of action in land so conveyed.   It is true, that the only mode in which a creditor, by the ordinary process of law, can avail himself of the real estate of his debtor, in satisfaction of his debt, is by attachment and seizure on execution; in other words, by action.   But the insolvent law, *St.* 1838, *c.* 163, § 5, provides, that the assignment shall vest in the assignees all the property of the debtor real and personal, not only such as the debtor himself could convey, but such as could have been taken on execution.   This includes all lands previously conveyed by deeds fraudulent against creditors, and voidable by being taken in execution.   If it vested in the assignee, — if the right of property was in him, — he could transfer and convey it.

But, as already suggested, it was immaterial whether or not the original conveyance by Gibbs to Harris was fraudulent against creditors; or, if it was so, whether the land *de facto* vested in the assignee, so that he had a right to convey it. If it was not, then the property did not pass to the assignee and his sale was void, and the plaintiff took no title under it. If it was fraudulent, it was by reason of acts done or suffered by him, which had given rights to creditors to reclaim the land and hold it against and under him, and was an incumbrance, against which he warranted.

If the assignee took any interest in this life estate of the debtor, for the benefit of creditors, on the ground, that the conveyance was fraudulent, then the purchase of that interest by the plaintiff was nothing more than the extinguishment of an incumbrance, against which he had covenanted, and which he was bound to extinguish at his own expense, and by the doctrine of estoppel, this purchase of the outstanding right of creditors enured to the benefit of his grantee, with warranty, and made good the title of Harris.

The court are therefore of opinion, that by the principles of law, the plaintiff cannot set up a title, thus derived through the assignee from his creditors, to defeat his own conveyance, in plain violation of his covenant of warranty, and therefore that this action cannot be maintained.